**FOURTH DIVISION**
**PHIPPS, C.J.**
**MILLER and McMILLIAN, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**July 8, 2014**

# In the Court of Appeals of Georgia

A14A0360. SHUTTLEWORTH et al. v. RANKIN-SHUTTLEWORTH OF GEORGIA, LLC et al.

MILLER, Judge.

Rankin-Shuttleworth of Georgia, LLC ("RSG") and Marvin Rex Rankin, III (collectively "Plaintiffs") filed suit against Rankin's former business partner, J. Sterling Shuttleworth, Shuttleworth's wife, Linda Nethery, and Shuttleworth's business, Venture Captive Management (collectively "Defendants"), alleging conversion, breach of fiduciary duty, tortious interference with business relations, fraud, misappropriation of trade secrets, defamation, unfair competition, malicious prosecution, civil conspiracy, and other claims.[1] Plaintiffs moved to disqualify Wayne Pierce and his law firm, Pierce & Dunkelberger, (collectively "Pierce") as

---

[1] The complaint also named Gene Church as a defendant, but the claims against him were later dismissed.

Defendants' counsel based on Pierce's prior representation of Plaintiffs. The trial court granted the motion, finding a clear conflict based on Pierce's prior representation of RSG and Rankin.

This Court granted Defendants' application for interlocutory appeal, and on appeal, Defendants contend that the trial court erred in disqualifying their counsel and in failing to first hold an evidentiary hearing. For the reasons that follow, we affirm the trial court's ruling.

"The ultimate determination of whether an attorney should be disqualified from representing a client in a judicial proceeding rests in the sound discretion of the trial judge. This Court will not interfere with a trial court's ruling absent abuse of that discretion." (Punctuation and footnotes omitted.) *Duvall v. Bledsoe*, 274 Ga. App. 256, 258 (617 SE2d 601) (2005).

Here, the evidence shows that Rankin and Shuttleworth first entered into the insurance business together sometime in 2002 or 2003. Their first joint-venture was named Rankin-Shuttleworth, Inc., and they later created RSG. In 2004, Rankin and Shuttleworth executed a membership agreement giving Shuttleworth the option to purchase Rankin's share of RSG. Pierce was involved in litigation regarding the

2

membership agreement, represented RSG in its business, and handled leases and employment matters for RSG.

In 2002, Shuttleworth was sued by Uni-Ter Underwriting Management Corporation, which alleged breach of contract, breach of fiduciary duty, interference with business and employment relations, and misappropriation of opportunities due to the violation of a non-compete agreement between Shuttleworth and Uni-Ter. In 2003, Rankin and Rankin-Shuttleworth Inc. were added as defendants in the Uni-Ter litigation. Pierce represented all the defendants in the Uni-Ter litigation.

In 2007, Shuttleworth tried to exercise his ability to buy out Rankin's share of RSG, and Rankin refused. From 2007 onward, Pierce represented Shuttleworth in his efforts to buy out Rankin's interest in RSG.

Plaintiffs filed this litigation in December 2010, but Defendants were not served until July 2011. Defendants, represented by Pierce, filed their answer in August 2011. In July 2012, Plaintiffs first sent a letter to Pierce notifying him of a potential conflict of interest. In February 2013, Plaintiffs filed their motion to disqualify Pierce, which the trial court granted.

1. On appeal, Defendants contend that the trial court abused its discretion in disqualifying Pierce as their counsel. We disagree.

3

The right to counsel is an important interest which requires that any curtailment of the client's right to counsel of choice be approached with great caution. In determining whether to disqualify counsel, the trial court should consider the particular facts of the case, balancing the need to ensure ethical conduct on the part of lawyers against the litigant's right to freely chosen counsel.

(Citation and punctuation omitted.) *Clough v. Richelo*, 274 Ga. App. 129, 132 (1) (616 SE2d 888) (2005).

The circumstance of representing a client against a former client in an action that is of the same general subject matter, and grows out of an event that occurred during the time of such representation, creates an impermissible appearance of impropriety [that requires disqualification].

(Punctuation omitted.) *Crawford W. Long Mem. Hosp. of Emory Univ. v. Yerby*, 258 Ga. 720, 722 (3) (373 SE2d 749) (1988).

Also, under Rule 1.9 (a) of the Georgia Rules of Professional Conduct, "[a] lawyer is disqualified from representing a party against a former client in a matter that is substantially related to the lawyer's prior representation." (Citations, punctuation, and footnote omitted.) *Rescigno v. Vesali*, 306 Ga. App. 610, 612 (1) (703 SE2d 65) (2010). As the party seeking disqualification, Plaintiffs had the burden to show that the "matters embraced within the pending suit are substantially related to the matters

4

or the cause of action involved in the previous representation." (Citations omitted.) *Cardinal Robotics, Inc. v. Moody*, 287 Ga. 18, 21 (694 SE2d 346) (2010). To do so, Plaintiffs were required to show that Pierce's former representation of Rankin and RSG had both material and logical connections to the pending litigation. Id.; *Duvall*, supra, 274 Ga. App. at 259.

(a) Here, we agree with the trial court that Plaintiffs met their burden, because the evidence showed that Pierce was actively involved in all legal aspects of the day-to-day operations of RSG, including hiring and discharging employees, and representing the business in a variety of matters. Moreover, although Pierce did not draft the membership agreement, he acted as RSG's general counsel at the time the membership agreement was executed and he advised RSG regarding the agreement. Pierce also represented Rankin and Rankin and Shuttleworth's prior joint-venture in the Uni-Ter litigation in 2002 and 2003, defending essentially identical claims to those presented in this litigation.

Therefore, it appears that Pierce's prior representation of Plaintiffs was substantially related to the current litigation. *Yerby*, supra, 258 Ga. at 721 (1). Moreover, the current litigation encompasses the same general subject matter and

grew out of events that occurred during the time Pierce represented Plaintiffs, creating an appearance of impropriety. *Yerby*, supra, 258 Ga. at 721-722 (3).

(b) In so holding, we find that Defendants' motion to disqualify Pierce was not untimely.

> A motion to disqualify should be made with reasonable promptness after a party discovers the facts which lead to the motion. Four factors are determinative of this issue: the length of the delay in light of the circumstances of the particular case, inclusive of when the movant learned of the conflict; whether the movant was represented by counsel during the delay; why the delay occurred; and whether disqualification would result in prejudice to the nonmoving party.

(Citations and punctuation omitted.) *Rescigno*, supra, 306 Ga. App. at 613 (1). The trial court must weigh these factors against the seriousness of the conflict alleged and the extent to which the public's confidence in the judicial system would be eroded if the motion was denied. *Ga. Baptist Health Care Sys., Inc. v. Hanafi*, 253 Ga. App. 540, 542 (559 SE2d 746) (2002).

In this case, Plaintiffs waited eleven months after Pierce first entered an appearance in the instant litigation before notifying him of a potential conflict and an additional seven months before seeking disqualification, despite the fact that Plaintiffs knew of Pierce's possible conflict before the litigation began. The delay in

this case is troubling and unexplained, especially in light of the fact that Plaintiffs have been represented by counsel since the complaint was filed in 2010. Nevertheless, there is little prejudice to the Defendants because there are still numerous motions to compel on which the trial court has not yet ruled and, therefore, discovery is not yet complete.

Under these particular facts, and given the seriousness of the conflict in this case, we conclude that the trial court did not abuse its discretion in disqualifying Pierce. *Duvall*, supra, 274 Ga. App. at 258.

2. Defendants contend that this Court should require trial courts to hold evidentiary hearings before granting motions to disqualify counsel or, in the alternative, should remand this case for an evidentiary hearing. We disagree.

Although Defendants requested an evidentiary hearing, they point to no law and we have found none requiring the trial court to hold an evidentiary hearing. Here, the parties submitted affidavits and other documentary evidence in support of their positions and the trial court heard oral argument on the matter. The trial court did not in any way limit Defendants' ability to offer evidence. As detailed above, the evidence presented to the trial court supported the trial court's ruling, and there does

not appear to be any reason to remand for an evidentiary hearing or mandate evidentiary hearings in all disqualification cases.

*Judgment affirmed. Phipps, C. J. concurs. McMillian, J. concurs in the judgment only in Division 1 (b) and fully otherwise.*